## IN RE GRANT.

No. 2621.   Decided April 24, 1914 (140 Pac. 226).

1. INTOXICATING LIQUORS—LICENSE — REVOCATION — APPEAL — STAY.
   A judgment revoking a liquor license being self-executing, an
   appeal therefrom does not suspend it, or stay its force, at least
   where a supersedeas bond is not given under Comp. Laws 1907,
   sec. 3314.   (Page 390.)

2. INTOXICATING LIQUORS—LICENSES — REVOCATION — APPEAL.   The
   power of the district court under Laws 1911, chap. 106, sec. 10,
   to revoke liquor licenses in cities of the first and second classes,
   as is its power under section 3 to order their issuance therein,
   is administrative, so that, in the absence of provision in the
   statute therefor, appeal does not lie from its order, ruling, or
   judgment revoking a license.   (Page 395.)

Original Contempt Proceedings against B. F. Grant.

DISMISSED.

*J. J. Whitaker* for plaintiff.

*H. J. Dininny, W. H. Folland,* and *Aaron Meyers* for
defendant.

STATEMENT OF FACTS.

On March 6, 1914, a citation was issued by this court to
B. F. Grant, chief of police of Salt Lake City, to show cause,
if any he has, why he should not be punished for contempt
for an alleged interference by him with a certain cause
pending in this court on appeal from the district court of
Salt Lake County, entitled "In the Matter of Revocation of
Retail Liquor Dealer's License Issued to E. W. Allen for
Use at Basement of 180 South Main Street, Salt Lake City,
Utah." The affidavit upon which the citation was issued,
among other things, recites: "That on the 1st day of April,
1913, by order of the district court . . . a retail liquor
license was issued to affiant (E. W. Allen); that on the 15th

day of January, 1914, Hon. B. F. Grant, chief of police of Salt Lake City, Utah, on behalf of himself, petitioned to the court for a revocation of said license, a copy of which petition is hereto attached and made a part of this affidavit. . . . On the 28th day of January, 1914, affiant duly filed his answer to said petition, a copy of which answer is hereto attached and made a part of this affidavit. That on the ——— day of February, 1914, the issues were duly tried by the said district court, and on the 17th day of February, 1914, the court made its findings of fact and conclusions of law and judgment, a copy of which is hereto attached and made a part of this affidavit." It·is further recited that after an appeal to this court was taken and perfected, and an appeal bond filed with the clerk as provided by law, the licensee "on Saturday, February 28, 1914, between the hours of seven o'clock a. m. and twelve o'clock p. m., proceeded to sell and did sell intoxicating liquors under said license aforesaid at the place designated; . . . that thereupon . . . B. F. Grant, chief of police of Salt Lake City, Utah, in violation of the rights of affiant and in violation of the stay bond filed as aforesaid, . . . interfered and arrested and caused to be imprisoned the employees of affiant [naming them] for alleged violations of the liquor law, by reason of the revocation of said liquor license, and upon the ground that affiant's license to sell liquor at retail had been revoked as aforesaid."

The findings of fact made by the court in the proceedings had on this petition for revocation of the liquor license mentioned and the answer filed thereto are within and responsive to the issues, and, so far as material here, are as follows: That a retail liquor license was duly issued to E. W. Allen "for use at basement of 180 South Main street. . . . That a retail liquor business has been conducted, engaged in, and carried on by said E. W. Allen at the premises designated . . . under the name of 'Portola Cafe,' from and since April 1, 1913, to and including the 15th day of January, 1914. . . . That said licensee, E. W. Allen. on each and every day, except Sundays, from September 1,

1913, up to January.15, 1914, had willfully failed and neg-
lected to close said licensed premises at the hour of twelve
o'clock, midnight, and he has willfully and unlawfully per-
mitted said place of business to remain open to the public,
and allowed and permitted patrons of said place to remain
in and upon said premises, after the hour of twelve o'clock,
midnight, of each and every day aforesaid, and to be and
remain in and upon said premises between the hours of
twelve o'clock midnight, and six o'clock a. m. of said days,
contrary to the provisions of chapter 106, Laws of Utah
1911. . . . That said licensee, E. W. Allen, on each
and every day (aforesaid) except Sunday . . . has
willfully, and unlawfully allowed and permitted certain
forms of amusement, commonly known as cabaret show, in-
cluding singing, dancing, piano and violin playing, in and
upon said premises licensed for the sale of intoxicating
liquors at retail, contrary," etc. "That said licensee . . .
from September 1, 1913, to January 15, 1914, has will-
fully and unlawfully permitted and allowed a certain fe-
male to act as cashier of said retail liquor business conducted
upon the premises aforesaid, and has allowed said female to
remain in and upon said premises at all times when the
same was open to the public, and to be and remain in the
room where intoxicating liquors are sold at retail and served
to patrons of said place, contrary to chapter 106, Laws of
Utah 1911. That said licensee, E. W. Allen, from Septem-
ber 1, 1913, to January 15, 1914, had willfully and un-
lawfully permitted and allowed said licensed premises where-
in said retail liquor business was carried on . . . to be
frequented and resorted to by lewd and disorderly women
and intoxicated persons, and has . . . permitted and
allowed said premises to be and become a resort for lewd
women, prostitutes, and intoxicated persons contrary," etc.
"That the obtaining of a restaurant license as aforesaid, and
in the operating of said licensed premises under the name of
'Portola Cafe,' is a sham and subterfuge carried on and prac-
ticed by said licensee for the purpose of evading the pro-
visions of the law wherein women are prohibited from enter-

ing premises licensed for the sale of intoxicating liquors at retail, prohibiting the use of tables, chairs, and benches in such licensed premises, prohibiting music, entertainment, or any form of amusement, or the dispensing of free lunch, or lunch for which money is paid, in the room where a retail liquor business is carried on."

As a conclusion of law the court held that the license of E. W. Allen "should be revoked and canceled." A decree was entered, which, among other things, recites "that the retail liquor dealer's license heretofore issued . . . to E. W. Allen for use at basement of 180 South Main Street, etc., for a period of one year commencing April 1, 1913, . . . is hereby canceled and revoked, which said order of revocation shall be effective at twelve o'clock, midnight, Saturday, February 7, A. D. 1914."

Section 25 of chapter 106, Laws Utah 1911, among other things, provides that in cities of first and second class "it shall be lawful, unless otherwise provided by ordinance in such cities, for such places of business (retail liquor business) to remain open between the hours of six o'clock a. m. and twelve o'clock, midnight, and it shall be unlawful for any such licensee to sell, barter, give away or otherwise furnish intoxicating liquors within the hours during which the place of business of such licensee is herein required to be closed."

Section 26 provides that "it shall be unlawful for any licensed retail (liquor) dealer by himself, agent or servant, to permit any one to remain in the saloon after the hour of closing, as provided in the preceding section, but at the time when such saloon should be closed, he shall require all persons to at once vacate the premises and see that the doors are securely closed and locked."

Section 28 provides, in part, as follows:

"The licensed premises shall be conducted in a quiet, orderly manner; there shall be no gambling, . . . nor any music, phonograph, or other form of amusement or entertainment, or free lunch, nor lunch for which money is paid, in the room where said business is carried on; . . .

no female shall be employed in the place; no woman, minor, drunkard or intoxicated person shall be allowed in the room; there shall be no chairs, benches, nor any other furniture in the room, except behind the bar, and only such behind the bar as is necessary for the attendants."

Section 29, among other things, provides:

"It shall be unlawful for any dealer in intoxicating liquors . . . to permit the room wherein he is licensed to sell liquor to be in any way connected with any room wherein or connected with which any prostitution, . . . or wherein any prostitutes are permitted to visit for any purpose, or wherein any women are permitted for any unlawful purpose."

McCARTY, C. J. (after stating the facts as above).

Counsel for petitioner, E. W. Allen, concede at the threshold of their discussion of the case that "it was for the legislature to say that in small communities the city council have the right to grant and revoke licenses without appeal," and that "it was especially their right that where in great communities, when large establishments are built up under a liquor license, that district courts grant, and upon a trial and judgment, have the power to revoke." The important question, therefore is: Does the appeal suspend, or, more correctly speaking, temporarily vacate, the judgment of the district court, and operate as a bar to the prosecution of the licensee, his agents and employees, for the selling of liquors during the pendency of the appeal? The great weight of authority seems to be that where, as in the case at bar, the judgment is self-executing, and no act of a ministerial officer is necessary to make it effective, an appeal does not suspend or otherwise stay the force and effect of the judgment.

In 20 Ency. Pl. & Pr. 1244, it is said:

"Under the statutes regulating the filing of supersedeas bonds, it is held that as a supersedeas has the effect of merely staying proceedings, without destroying the force and effect of the judgment, and leaves the proceedings in the condition in which it finds

them, and as a self-executing judgment requires no proceeding for its enforcement, there is nothing upon which a stay bond can operate in the case of such a judgment."

In Elliott, App. Pro. section 392, it is said:

"Where a judgment or decree executes itself, that is, where no act of a ministerial officer is necessary to put it into effect, the supersedeas does not alter the state of things created by the judgment from which the appeal is prosecuted. This doctrine is strikingly illustrated by the case wherein it was held that a judgment suspending an attorney from practice executes itself, except as to costs, and the granting of a supersedeas only suspends the right to enforce collection of costs, and does not allow the attorney to practice pending the appeal." (Citing Walls v. Palmer, 64 Ind. 493.)

The cited case involved the question of whether an attorney, who had been disbarred and his license revoked by the circuit court, was entitled to practice his profession during the time the cause was pending on appeal to the Supreme Court. In the course of the opinion the court said:

"But it is urged that the appeal and supersedeas, . . . by staying the judgment of suspension, has the effect of restoring the petitioner to his rights as an attorney and counselor during the pendency of the appeal. . . . To give them that effect, and grant the prayer of the petitioner, would be to reverse the judgment of the suspension by a writ of mandate before the appeal is judicially decided. The effect of the appeal and supersedeas is to stay the judgment of suspension as it is, and prevent further proceedings against the petitioner. It does not reverse, suspend, or supersede the force of the judgment. That remains in all respects the same. The judgment itself requires no further execution than its own terms; it executes itself, except as to the collection of costs, which is stayed by the appeal and supersedeas."

In Black on Intoxicating Liquors, section 196, the author says:

"The revocation of a license, under due proceedings, absolutely extinguishes the license; and *certiorari* taken to such action is no bar to a prosecution for sales made either during the pendency of the writ, or of an appeal from a judgment affirming the action of the board." (1 Woollen & Thornton, Intox. Liq., sec. 456.)

*Padgett v. State,* 93 Ind. 396, is a case in which the board of commissioners denied Padgett a license to sell liquor. He prosecuted an appeal to the district court, and succeeded in obtaining judgment that he was a fit person to receive a license. The remonstrators appealed from the judgment of the circuit court, and filed the proper appeal bond. It was there contended, as in the case at bar, that the judgment was ineffective and inoperative during the pendency of the appeal. The court said:

"The statute . . . provides that, 'when an appeal is taken during the term at which judgment is rendered, it shall operate as a stay of all further proceedings,' and if the act of taking out a license is a proceeding on the judgment, then the appeal stayed the appellant from obtaining the license. We do not regard the issuing of the license as a proceeding on the judgment within the meaning of the statute. One reason for this conclusion is that the judgment is self-executing. The entry of the judgment entitles the applicant to his license without any other proceedings on the judgment. . . . There is, indeed, no provision for enforcing obedience to the judgment by process, and none is needed, for the judgment enforces itself. . . . There is no necessity for any process; there is no property to be seized by it; no wrongdoer is to be ejected from an office, or from property, or anything of that kind; all that can possibly be accomplished is effected by the judgment itself."

This question was involved in the case of *Neuman v. State,* 76 Wis. 112, 45 N. W. 30. In the course of the opinion the court says:

"The more serious question is whether the pendency of the writ of *certiorari,* and the subsequent appeal from the judgment thereon to this court, operated as a bar to the prosecution of Neuman for selling during the time which would have been justified by the license, had it not been so revoked."

The court after discussing the question says:

"It follows, from what has been said, that neither the pendency of the *certiorari,* nor the appeal from the judgment affirming the order of the village board, and quashing the writ, operated as a bar to the prosecution for the several offenses of which Neuman was convicted in this action."

The authorities seem to quite uniformly hold that in the granting and refusing of licenses to sell liquors much is left to the discretion of the court or board charged with that duty, and in most jurisdictions the law does not require the same strictness as to proof and procedure that obtains in actions or special proceedings generally. The object being the revocation of a privilege rather than punishment, the authority or tribunal vested with this power "are not required to take the formal proceedings essential to form a basis of a judicial decision affecting liberty, or property," but the proceedings may be summary. Black, Intox. Liq. section 194.

Section 10, chap. 106, Laws Utah 1911, among other things, provides:

"The district courts of the several counties in which cities of the first and second class may be situated, city councils of cities of the third class, board of trustees or board of county commissioners, for violation of any of the provisions of this act or any ordinance, or *for any other good cause,* . . . may revoke a license granted within the city, town or county, as the case may be. For the purpose of carrying out the provisions of this section, the district court, city council, board of trustees or board of county commissioners, as the case may be, shall have power to issue or cause to be issued subpoenas and to compel the attendance of witness and to administer oaths. . . . The district courts of the several counties wherein are situated cities of the first and second class shall make and enforce rules of procedure and practice upon application for license, hearing of protests upon applications, and the revocation of licenses so that *such matters may be speedily tried and determined in accordance with justice and right."* (Italics ours.)

It will thus be seen that the legislature, by this enactment, intended to give and has given the legally constituted authorities whose duty it is to grant, and in proper cases revoke, licenses, a broad discretion in such matters. A copy of the findings of fact made by the court, and which form the basis of the judgment revoking the license in question, is at-

tached to and made a part of the affidavit upon which the citation under consideration was issued. Excerpts from the findings of fact are set forth in the foregoing statement of the case. These findings, which are presumed to be supported by the evidence, furnish a good illustration of the wholesomeness of the rule giving the court, board, or city or town authorities a broad discretion in matters pertaining to the liquor traffic. The record presented by affiant E. W. Allen in the affidavit upon which the citation herein was issued shows that he, during the time he was engaged in the sale of intoxicating liquors under his license, persistently and continuously violated the statute regulating and restricting the sale of intoxicating liquors. By thus referring to the portions of the record of the main case which are incorporated in and made a part of the affidavit under consideration, we do not wish to be understood as expressing an opinion respecting the merits of the cause or any question presented by the appeal. Our only purpose in inviting attention to these matters is that they furnish the strongest possible argument that can be made in support of the doctrine holding that an appeal from a judgment revoking a liquor license does not destroy the force and effect of the judgment pending the appeal.

As stated by counsel for B. F. Grant, chief of police, to whom the citation in question was issued, in their brief filed herein: "If counsel's theory is correct, that the appeal operates in such a manner as to permit the licensee, Allen, to continue the sale of liquors under his license, then it must be upon the theory that such license is reinstated and has its full force and effect. It takes no argument to show that this in effect nullifies and makes of no effect the judgment of court revoking the license. At least this would be true during the time when said case is on appeal." In other words, the appeal would have the effect of temporarily vacating the judgment. As we have pointed out, the great weight of authority is to the effect that a judgment in this class of cases is self-executing. Therefore, when the district court rendered the judgment under consideration, affiant's license to

sell liquor was canceled and extinguished, and the taking of an appeal to this court could not, and did not, revive or reinstate the license. Assuming, for the sake of argument, but not conceding, that the giving of an undertaking (supersedeas bond) as required by Comp. Laws 1907, section 3314, would suspend the force and effect of the judgment, and in effect reinstate the license revoked and canceled by the judgment, and that affiant would thereby be entitled to sell liquor under and in pursuance of the license during the pendency of the appeal, no such bond or undertaking was given in the court below, and affiant has not applied to this court for permission to file such undertaking. Therefore the judgment, under affiant's theory of the law, has not been and is not suspended.

For the reasons stated, the order citing B. F. Grant, chief of police, to show cause why he should not be punished for contempt, is set aside, and the proceeding dismissed.

STRAUP, J.

I concur in the rulings of the Chief Justice; but I am further of the opinion that the order, or so-called judgment, of revocation is not appealable. This for the reason that the power conferred on district courts by section 3, chap. 106, Laws 1911, to direct or order city councils of cities of the first and second class to issue liquor licenses, and by section 10 to revoke such licenses, is special, summary, administrative, and inseparable from the sovereignty of the state—a power conferred on the district court as a mere agent of the state, exercising police powers of the state. That I think evident, not only from the nature of the power conferred, but also from the language of the act conferring and delegating the power. The statute itself does not provide for an appeal from an order or ruling granting or refusing a license, or revoking or refusing to revoke it.

The claim made is that such a ruling or order is "a judgment," a final judgment; and since the Constitution grants the right of an appeal from all final judgments of the district court, an appeal lies from this order or so-called judg-

ment of revocation. I do not think the claim well founded. Liquor licenses or permits are neither contracts nor rights of property. They are mere permits, issued or granted in the exercise of the police power of the state, to do what otherwise would be unlawful. The same tribunal authorized to direct or grant the issuance of a license is also authorized to revoke it. There is no difference as to the nature of the power exercised in granting a license and in revoking it. In both the court acts in an administrative capacity and as the mere agent of the state. The state itself may grant or withhold liquor licenses or permits, or revoke them as it may think proper. It may likewise delegate that power to others. As to cities of the first and second class the power has been delegated to district courts; as to cities of the third class, towns, and counties, to boards of trustees, commissioners, and city councils. Now, I see no difference as to the nature and character of the power, whether exercised by a district court, or a board of trustees, or commissioners, or a city council. If an appeal lies from an order or ruling of the district court granting or refusing a license, or revoking or refusing to revoke it, then it would seem an appeal would also lie from similar action by a board of trustees or commissioners, or a city council. To say that an appeal lies when the power is exercised by a district court, but not when exercised by a board or city council, is to look, not to the substance of the power conferred and exercised, but to the mere instrumentality to which it is delegated and through which it is exercised. Of course, the legislature could have provided for an appeal, as is the case in some jurisdictions; but that was not done. I therefore think the order unappealable, and that the case is not legally pending in this court; and hence the party complained of has committed no offense in this court. We are thus, on a proceeding by appeal, without jurisdiction to inquire into or adjudge the alleged matters presented by the petitioner.

If, however, I am wrong in this, and if the judgment is appealable and the action legally pending before us, then am I of the opinion, for the reasons given by the Chief Jus-

tice, that the order or judgment of the court below is self-executing, and that the execution of it was not stayed by the appeal.

FRICK, J.

I concur with the conclusions of the Chief Justice. I am, however, further of the opinion that the order revoking the license is not appealable, and with regard to that question I also fully concur with the views expressed by Mr. Justice Straup in his concurring opinion.